Jason **ROBERTSON**, a minor, by his mother and next friend, Ms. Tammie **ROBERTSON**, Plaintiffs,

v.

**GRANITE CITY COMMUNITY UNIT SCHOOL DISTRICT NO. 9 and The Board of Education of Granite City Community Unit School District No. 9, Defendants.**

Civ. No. 88–3268.

United States District Court, S.D. Illinois, East St. Louis Division.

May 4, 1988.

Alan K. Chen, Harvey Grossman, Chicago, Ill., Gerald L. Montroy, Carr, Korein, East St. Louis, Ill., for plaintiffs.

William S. Beatty, William W. Schooley, Granite City, Ill., Janie F. Smith, James B. Wham, Wham & Wham, Centralia, Ill., for defendants.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

This matter is before the Court on plaintiff Robertson's Motion for Temporary Re-

straining Order and Preliminary Injunction (Documents No. 2 and 9).[1] By agreement of the parties, the case has been submitted to the Court for decision upon documentary evidence and affidavits, however, because a dispute exists over the application of the law to otherwise substantially undisputed facts, the Court has entertained and heard oral argument by counsel for the parties on these points.[2]

### Background

Plaintiff Jason Robertson is a seven year old boy who was born with a severe case of hemophilia B. Apparently, during the course of the therapy administered for this disorder, he was exposed to the Human Immunodeficiency Virus (HIV) through contaminated blood products, resulting in him being diagnosed as having AIDS-related complex (ARC) in March of 1986.

In August of 1986, immediately prior to the time Jason would ordinarily have been enrolled in public kindergarten his mother apparently requested home instruction for him from the defendant District, believing that his physical and resultant psychological conditions were such that normal mainstream placement would be inappropriate. It then appears that the District initiated a full-scale home instruction evaluation and concluded that home instruction was warranted, whereupon an individual educational program (I.E.P.) was developed for Jason. The I.E.P. was formulated in conformance with the Illinois Department of Education guidelines promulgated in accordance with The Education for All Handicapped Children Act (EAHCA), 20 U.S.C. § 1400 *et seq.*

At the end of the 1986–1987 school year, it seems that Jason's mother desired that Jason not be homebound and after discussions with the school board (Board), he was placed on campus at Prather Elementary School in a separate "modular" classroom where he was and still is the only student. Subsequent to that placement and the return to a normal classroom environment of a child with AIDS in Belleville, Ms. Robertson requested that the Board place Jason back in a normal first grade classroom. The Board, on March 22, 1988, refused her request, and thereafter on April 25, 1988, she filed the instant suit on behalf of Jason seeking declaratory and injunctive relief, alleging that the Board's decision was violative of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* and the equal protection clause of the Fourteenth Amendment.

### Discussion

This case presents to the Court for the second time in six months the question of whether or not to order a local school board to place back in a normal classroom setting an elementary school aged child having an AIDS related condition. As it noted in the prior case, *Doe v. Belleville Public School Dist. No. 118*, 672 F.Supp. 342 (S.D.Ill. 1987), given the almost epidemic proportions of the AIDS crisis, it is predictable that the number of such cases will rise dramatically in the coming years. While the Court fully appreciates the legitimate concerns of the citizens of this District regarding the placement of their children with children having an AIDS related condition, it must be remembered that it is the duty of this Court to decide these cases under the law and current medical knowledge as it relates to the transmission of the disease, as opposed to its personal views or the apprehensions of others. It is only in the exercise of this type judicial authority that the rights of the true victims, the children, will be vindicated.

For a plaintiff to be entitled to a preliminary injunction, he must show five things: (1) that he has no adequate remedy at law, (2) that he will suffer irreparable harm if

---

1. Pursuant to Rule 65(a)(2), F.R.Civ.P., and by stipulation and agreement of the parties as evidenced by the Minute Order commemorating the status conference held on this matter May 2, 1988, the Court has consolidated these two motions for injunctive relief.

2. The Court notes that a preliminary injunction may be entered on the basis of affidavits and documentary evidence without an evidentiary hearing. *Squillacote v. Local 248, Meat & Allied Food Workers*, 534 F.2d 735, 748–49 (7th Cir. 1976), *See also, General Electric Co. v. American Wholesale Co.*, 235 F.2d 606 (7th Cir.1956). However, if the matter is presented on affidavits, the contents of all of them are entitled to equal weight. *General Electric*, supra, at 609.

the injunction is denied, (3) that the harm potentially suffered by the plaintiff if the injunction is not issued is greater than the harm the defendant will suffer if the injunction is granted, (4) that the plaintiff has a reasonable likelihood of success on the merits, and (5) that the injunction will not harm the public interest. *Roland Machinery Co. v. Dresser Industries,* 749 F.2d 380, 382–83 (7th Cir.1984), *see also American Hospital Supply Corp. v. Hospital Products, Ltd.,* 780 F.2d 589, 593–94 (7th Cir.1986). For purposes of clarity, the Court will address each of these areas separately.

Lack of Adequate Remedy at Law

■ The defendants urge the Court to find that because they have developed an I.E.P. for Jason, his case is covered by EAHCA and, therefore, he has an administrative remedy for his claim. Similarly, defendants argue that because EAHCA applies, exhaustion of this administrative remedy is required before this Court acquires jurisdiction to grant the relief requested. *See Timms v. Metro Sch. Dist. of Wabash County, Ind.,* 722 F.2d 1310 (7th Cir.1983), 20 U.S.C. § 1415(e)(2).

This Court has recently addressed what is necessary for an individual to be covered under that statute. In *Doe v. Belleville Independent School Dist. No. 118,* 672 F.Supp. 342 (S.D. Ill. 1987) the Court held that EAHCA applies to AIDS victims *only* if their physical condition is such that it adversely affects their educational performance; i.e., their ability to learn and to do the required classroom work. *Doe,* supra, 672 F.Supp. at 345. Here, the report of the I.E.P. committee concludes that Jason's learning and behavioral problems are *not* the result of his ARC or hemophilia. That being the case, as in *Doe,* the Court concludes that EAHCA is not applicable to the plaintiff at this time.

While the Court respects defendants' attempts to provide an individually tailored program of instruction for Jason, it is clear that he is not "handicapped" within the meaning of EAHCA because his learning and behavioral problems, by the defendants' own admission, are not a result of his health condition. This conclusion is further buttressed by the affidavits of plaintiff concerning his medical condition as it relates to his educability. While plaintiff may well be currently in some sort of "special education" program, as a matter of law it cannot be pursuant to EAHCA for the reasons previously stated. That being the case, it is clear that Jason has no adequate remedy at law because there currently exists no procedural vehicle by which he can force the school district and its Board to return him to a normal classroom environment.

Irreparable Harm

■ As a threshold matter, it is difficult for the Court to imagine anything more traumatic for a child than going to school and being placed in a classroom by himself, not being allowed to play with other children, and not even allowed to eat with his classmates. The affidavit of Dr. Shopper concludes that the current isolation and segregation of Jason has caused "demonstrable psychological and emotional harm" to him. *Declaration of Moisy Shopper,* p. 5. Furthermore, after conducting a three week clinical study of the plaintiff, Dr. Shopper observes:

> "He [Jason] is acutely aware of his isolation and is presently suffering from overwhelming feelings of loneliness and exclusion. Failure to alleviate the developmental deprivation immediately will result in marked and adverse deviations in personality growth."

When this harm is added to the fact of his almost certain limited lifespan, this Court cannot help but conclude that Jason will suffer irreparable harm if the preliminary junction does not issue. Furthermore, the defendants have submitted no evidence which would refute either Dr. Shopper's or the Court's conclusions. For these reasons, the Court finds that plaintiff will suffer irreparable harm if the preliminary injunction is not issued.

Harm Suffered by the Defendants

■ The Court finds that analysis of this element of the *Roland Machinery* test is fairly easy. It must balance the interests

of a seven year old child suffering from severe isolation and loneliness against those of the Board and District in maintaining appropriate placement of him. Much of the argument made by the defendants surrounds what type "regular" classroom Jason should be placed in. However, that is really not the issue. The true issue is whether or not isolating and segregating him is consistent with the learning and behavioral disorders he is alleged to have.

Upon consideration, the Court concludes the harm to defendants in requiring that Jason be "mainstreamed" is minimal at best. No additional requirements will be necessary to accommodate him other than those already in place and, furthermore, issuance of the injunction may in fact help the defendants inasmuch as they will not have to take responsibility for unilaterally placing Jason back in school.[3] Thus, the Court concludes that the harm in sanctioning the continued isolation of Jason clearly outweighs any harm to the defendants if a preliminary injunction issues.

### Likelihood of Success on the Merits

■■■ Having concluded that EAHCA is not applicable to this case, the sole issue to be decided on the merits will be if Jason's segregation is violative of the Rehabilitation Act. Defendants have conceded at oral argument that Jason is "handicapped" within the meaning of that Act, and the Court has already observed from the bench that the question of "otherwise qualified" really centers around his medical qualifications to be in the same classroom with other children. While the Court does not wish to go far into the merits at this point, it can candidly state that at this juncture the record shows that Jason is "otherwise qualified" to attend school in a normal setting.[4] For these reasons, the Court concludes that the plaintiff has more than a reasonable likelihood of success on the merits as the record now exists and, therefore, this part of the *Roland* test has been met.

### The Public Interest

■ Finally, addressing the public interest, the Court finds that enjoining the defendants from excluding Jason from a normal classroom setting will mete little if any harm to the public interest. To the contrary, given the likelihood of this situation recurring, it may in fact advance the public interest. Based on the Court's prior experience with children with AIDS in the public schools and the evidence in this case, it is manifest that Jason poses no significant health threat to his peers, or, they to him. The overwhelming weight of medical authority (including that of the A.M.A. and the National Center for Disease Control) supports this conclusion. In fact, given the volatility of the issue, it would seem that returning Jason to a normal classroom setting would demonstrate to the public that this problem must be dealt with in a rational fashion, and our collective knowledge, based on reasonable medical certainty, indicates that a child in Jason's condition poses no significant threat to his classmates. Furthermore, it is clear that this controversy has evoked unrest in the Granite City Community and placing Jason back in a regular classroom will, at least temporarily, end this controversy. Hopefully, in the time between issuance of this injunction and a trial on the merits, the District and the Board can continue with their previous efforts at educating the public and allaying any unfounded or misguided fears they may have. Therefore, the Court finds that the public interest will not be harmed by issuance of an injunction.

In light of the foregoing, and pursuant to Rule 52(a), F.R.Civ.P., the Court makes the following findings of fact and conclusions of law:

### Findings of Fact

1. Plaintiff Jason Robertson is a seven year old male child suffering from severe hemophilia B and is diagnosed as having AIDS-related complex (ARC).

---

3. The Court notes that the affidavits submitted by the defendants, in fact, contemplate returning Jason to a normal classroom with special education support either for summer school, or, at the beginning of the 1988–1989 school year which commences this fall.

4. The Court does not imply what setting is appropriate, only that Jason is probably as medically qualified as any other child to be in a normal classroom.

2. Plaintiff's ARC is a physical impairment which substantially limits his major life activities.

3. Plaintiff has a record of such impairments.

4. Plaintiff's alleged learning and behavioral disabilities are not the result of any of his physical impairments.

5. Plaintiff's isolation and segregation incident to defendants' current placement of him presently causes irreparable harm to his emotional and social development.

6. Failure to grant a preliminary injunction will cause continued irreparable harm to the plaintiff.

7. Granting of a preliminary injunction will not harm defendants or the public interest.

### Conclusions of Law

1. Plaintiff is not a handicapped individual within the meaning of The Education for All Handicapped Children Act (EAHCA).

2. Plaintiff is handicapped within the meaning of the Rehabilitation Act of 1973 and at this point is otherwise qualified under the Act.

3. Plaintiff has a reasonable chance of success on the merits of his claims.

4. Plaintiff has no adequate remedy at law.

5. That plaintiff will suffer irreparable harm if an injunction does not issue.

For the foregoing reasons, plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Documents No. 2 and 9) are hereby GRANTED.

IT IS, THEREFORE, ORDERED that:

1. Effective the beginning of the school day Monday, May 9, 1988, the Granite City Unit School District No. 9 and the Board of Education of Granite City Community Unit School District No. 9, return plaintiff JASON ROBERTSON to a regular classroom setting at Prather Elementary School.

2. That on or before said date the plaintiff JASON ROBERTSON be re-moved from his present segregated placement and that said defendants treat and provide him with all those educational services which would be provided to him if he did not have the HIV infection.

3. The Court deems security for costs unnecessary in this case because of the strong likelihood that plaintiff will succeed on the merits. Therefore, the security required by Rule 65(c), F.R.Civ.P. is hereby WAIVED.

4. This preliminary injunction is being issued to stop the immediate and demonstrable irreparable harm to plaintiff's emotional and social well-being occasioned by defendants' excluding him from a normal classroom setting where he otherwise would be educated with his peers.

5. This preliminary injunction shall remain in effect until such time as this Court renders a decision on the merits of this case.

IT IS SO ORDERED.