858 P.2d 1213

STATE of Arizona, ex rel. Charles L. MILLER, Director, Department of Transportation, Petitioner,

v.

Honorable Edward L. DAWSON, a Judge of the Gila County Superior Court; Ben N. McGowen, H. Gail Knuckey, and the Gila County Treasurer, real parties in interest, Respondents.

No. CV–92–0413–SA.

Supreme Court of Arizona,
En Banc.

Sept. 2, 1993.

Grant Woods, Atty. Gen. by Bryan B. Perry and Robert J. Sokol, Asst. Attys. Gen., Phoenix, for petitioner.

Meyer, Hendricks, Victor, Osborn & Maledon by Robert V. Kerrick and G. Murray Snow, Phoenix, for real parties in interest McGowen and Knuckey.

Joe Albo, Jr., Gila Co. Atty., Globe, for Gila County Treasurer.

## OPINION

MOELLER, Vice Chief Justice.

### FACTS

Respondents and real parties in interest Ben N. McGowen and H. Gail Knuckey

(McGowen) filed a complaint in inverse condemnation in the Gila County Superior Court against petitioner, the State of Arizona (state). The amended complaint sought damages for a taking of McGowen's land along State Route 288 between Globe and Young, Arizona, as a result of runoff water discharged onto McGowen's property. The Arizona Highway Commission adopted a resolution in 1959 purporting to establish a road on the land, but eminent domain procedures had never been instituted nor had the state formally acquired title to the land in any other way.

The state's defense to the inverse condemnation action was that the roadway property was no longer owned by petitioners but had, instead, been acquired by the state either through prescription or through the operation of A.R.S. § 28–1861(B). McGowen denied that the state has acquired title by prescription and contended that § 28–1861(B) did not operate to vest title in the state, but was only a curative statute. McGowen contended alternatively that if § 28–1861(B) did transfer title to the state, it was an unconstitutional taking of his property without just compensation and denied him his state and federal due process notice rights.

Both parties moved for summary judgment. The trial judge granted partial summary judgment for McGowen, holding that the "taking" was unauthorized. The trial court directed the case to proceed on damages only, expressly leaving open all questions relating to any applicable limits that would apply to plaintiff's damages, including any limitations on the period of time for which damages could be claimed.

After this ruling by the trial court, the state filed an eminent domain action against the property, which was consolidated with the inverse condemnation action. While the consolidated cases were pending in the trial court, Division One of the Court of Appeals issued its opinion in *Gotland v. Town of Cave Creek*, 172 Ariz. 397, 837 P.2d 1132 (App.1991). In *Gotland*, the appeals court held that § 28–1861(B) was constitutional and that it transferred title to roadways to the state as a result of long-

standing public use. Armed with *Gotland*, the state asked the trial court in this case to reconsider its partial summary judgment. When the trial court declined to do so, the state filed this special action.

We accepted jurisdiction to resolve important statewide issues involving the proper interpretation of § 28–1861(B). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and Ariz.R.P.Spec.Act. 4 and 7. We also granted the property owners' petition for review in the *Gotland* case and consolidated the two cases for oral argument. We resolve both cases today by separate opinions. In this case we agree with the Gila County Superior Court's grant of partial summary judgment and therefore deny relief to the state.

### ISSUE

Whether A.R.S. § 28–1861(B), properly construed, is a curative statute such as its predecessor and companion statute, § 28–1862, or whether § 28–1861(B) transfers to the state title to land used for roadways for specified periods beginning before January 1, 1960.

### DISCUSSION

#### I. No Public Highway By Prescription

According to the state, there has been no taking under the statute because there was nothing to take. The state argues that it acquired title to the land by prescription long before § 28–1861(B) became effective in 1974. McGowen counters that Arizona common law did not and still does not allow for the creation of public highways by prescription.

In some states, use by the public can indeed lead to the creation of public highways by prescription. *See, e.g., Dutton v. Slayton*, 92 N.M. 668, 669, 593 P.2d 1071, 1072 (1979); *see also* 39A C.J.S. *Highways* § 3 (1976). However, since territorial days, Arizona cases have consistently held that no public highway can be created by prescription. *See, e.g., State ex rel. Herman v. Electrical Dist.*, 106 Ariz. 242, 243, 474 P.2d 833, 834 (1970); *Graham County v.*

*Dowell*, 50 Ariz. 221, 226, 71 P.2d 1019, 1021 (1937); *Curtis v. Southern Pac. Co.*, 39 Ariz. 570, 573, 8 P.2d 1078, 1079 (1932); *Champie v. Castle Hot Springs Co.*, 27 Ariz. 463, 467, 233 P. 1107, 1108 (1925); *Tucson Consol. Copper Co. v. Reese*, 12 Ariz. 226, 228–29, 100 P. 777, 778 (1909); *Territory v. Richardson*, 8 Ariz. 336, 339, 76 P. 456, 457 (1904). In *Herman*, just three years before A.R.S. § 28–1861(B) was passed, this court stated:

> public highways are such only as come within the express provisions of the statute declaring them to be such, while private ways are such as are laid out by authority of law.... In Arizona, public highways can only be established in a manner provided by statute and cannot be established by prescriptive use.

*Herman*, 106 Ariz. at 243, 474 P.2d at 834 (quoting *Old Pueblo Transit Co. v. Arizona Corp. Comm'n*, 84 Ariz. 389, 393, 329 P.2d 1108, 1111 (1958)).

■ Although the state argues that Arizona law permits creation of public highways by prescription, the cases it cites in support of its argument are not public highway cases. *See Busby v. State ex rel. Herman*, 101 Ariz. 388, 390, 420 P.2d 173, 175 (1966) (action for right of ingress or egress); *Maricopa County Mun. Water Conserv. Dist. v. Warford*, 69 Ariz. 1, 8, 206 P.2d 1168, 1172 (1949) (inverse eminent domain action for damage caused by diverted water). It is clear that Arizona law does not permit the creation of public highways by prescription. Therefore, we reject the state's argument that the owners lost their rights in the property before the enactment of A.R.S. § 28–1861(B).

## II. Construction of § 28–1861(B)

We turn next to the state's argument that § 28–1861(B) transferred ownership of the land in question from McGowen to the state. That statute, enacted in 1973, effective July 1, 1974, provides:

> All highways, roads or streets which have been constructed, laid out, opened, established or maintained for ten years or more by the state or any agency or legal subdivision of the state prior to January 1, 1960, and which have been used continuously by the public as thoroughfares for free travel and passage for ten years or more, regardless of any error, defect or omission in the proceeding or failure to act to establish such highways, roads or streets, or in recording of the proceedings, and all such highways, roads or streets are declared public highways.

In *Gotland*, the court of appeals held that, under § 28–1861(B), "the property owner has lost his property rights by failing to preserve them from public use" when the public used the road for a ten-year period beginning before January 1, 1960. 172 Ariz. at 400, 837 P.2d at 1135. McGowen contends that the *Gotland* court erred when it held that § 28–1861(B) changed the Arizona common law rule that no highway can be created by prescription. He argues that before § 28–1861(B) was enacted, a landowner had no reason to prevent the public from using a road across his land. The *Gotland* decision converts this prior public use, innocent at the time, into the engine that divests McGowen of his property rights with no advance notice, no opportunity to be heard, and no compensation. He argues that this interpretation of the statute violates his state and federal constitutional rights to due process and just compensation.

Section 28–1861(B), as interpreted by the court of appeals in *Gotland*, would clearly be a retroactive change in Arizona common law. Because it provides for no compensation and provides no grace period within which to act to protect property rights, we fail to see how it could pass constitutional muster if, in fact, its intent was to pass title. *Cf. Huck v. Haralambie*, 122 Ariz. 63, 65, 593 P.2d 286, 288 (1979) ("Due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful matter."). *Texaco, Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982), relied upon by the state, does not change this analysis. In *Texaco*, the United States Supreme Court upheld the constitutionality of an Indiana statute, even though it divested mineral

rights from inactive owners. *Id.* at 529, 102 S.Ct. at 792. However, the statute at issue in *Texaco* was constitutional because, among other things, it provided for a two-year grace period during which inactive owners of mineral rights could retain their property rights by asserting them. *Id.* at 531–33, 102 S.Ct. at 793–94. In contrast, § 28–1861(B), as interpreted in *Gotland,* provides the landowner no such method to protect his rights.

Although the legislature certainly could alter prior case law and provide that public highways could prospectively be created by prescription, we do not believe it intended to do so by enacting § 28–1861(B). First, the statutory language does not manifest any clear intent to change the common law. *See Carrow Co. v. Lusby,* 167 Ariz. 18, 21, 804 P.2d 747, 750 (1990) (The court will not read a statute as altering common law absent an express intent by the legislature to do so.). Second, the change in the common law sought by the state would render § 28–1861(B) unconstitutional. *Senor T's Restaurant v. Industrial Commission,* 131 Ariz. 360, 364, 641 P.2d 848, 852 (1982) (legislation is construed to be constitutional whenever possible). Third, and perhaps most important, the legislature passed § 28–1861(B) shortly after a very similar statute had been ruled to be curative only. In *City of Tucson v. Morgan,* 13 Ariz.App. 193, 195, 475 P.2d 285, 287 (1970), the court of appeals considered the effect of § 18–152 (now § 28–1862(A)). That statute provides:

A. All highways constructed, laid out, opened or established prior to August 12, 1927 as public highways by the territory or state, or by a board of supervisors or legal subdivision of the state, and which have been used continuously by the public as thoroughfares for free travel and passage for two years or more, regardless of any error, defect or omission in the proceeding to establish the highways, or in recording of the proceedings, and all highways established pursuant to law, are declared public highways sixty-six feet wide, unless the width thereof is otherwise specified.

In *Morgan,* the city of Tucson made the same argument the state makes here. The court of appeals disposed of the argument as follows:

We believe that the effect of this statute is no greater than the filing of a resolution and recording of a map or plat. To interpret this statute as giving title to the land in question would be to violate the constitutional provisions for the taking and damaging of private property....

13 Ariz.App. at 195, 475 P.2d at 287.

▉ Had the legislature intended a statute virtually identical to the one interpreted in *Morgan* to have a vastly different effect, surely it would have found words to express its intent. We agree with the *Morgan* court. Like its predecessor and companion statute, § 28–1861(B) is a curative statute. It is in the Highway Commission Code—not in the Limitations of Actions Code. The state could not acquire title to a public highway through prescriptive rights before the statute, and the statute does not purport to alter that law. The statute, however, has other significant results. For example, the state is not permitted to expend public funds in the upkeep of highways that are not public highways. *Dowell,* 50 Ariz. at 226–27, 71 P.2d at 1022. Among other things, § 28–1861(B) cures any ultra vires problem previously existing where the state had been expending public monies on what were technically not public roads. Its predecessor and companion statute, the one interpreted in *Morgan,* did the same thing for pre–1927 roads.

We therefore reject the state's argument that it acquired title to the property pursuant to § 28–1861(B). In doing so, we necessarily disagree with the court of appeals' opinion in *Gotland.*

**DISPOSITION**

The state has not acquired title to the land either through prescription or through the operation of § 28–1861(B). The trial court's ruling was correct. Accordingly, we accept jurisdiction of the special action and deny relief. The action shall proceed

in the trial court in accordance with this opinion and the trial court's earlier ruling.

FELDMAN, C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.