IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MARICOPA COUNTY,
*Plaintiff/Appellee,*

*v.*

JASON HENRY ROVEY, et al.,
*Defendants/Appellants.*

No. 1 CA-CV 19-0659
FILED 12-29-2020

Appeal from the Superior Court in Maricopa County
Nos.  CV2017-004191, CV2017-004192
CV2017-004308, CV2017-014367
(Consolidated)
The Honorable Michael W. Kemp, Judge

**AFFIRMED**

COUNSEL

Zeitlin & Zeitlin, Phoenix
By Dale S. Zeitlin
*Counsel for Defendants/Appellants*

Maricopa County Attorney's Office, Phoenix
By Jean W. Rice
*Co-Counsel for Plaintiff/Appellee*

Gust Rosenfield, P.L.C., Phoenix
By Scott A. Malm
*Co-Counsel for Plaintiff/Appellee*

---

## OPINION

Presiding Judge Samuel A. Thumma delivered the opinion of the Court, in which Judge D. Steven Williams and Judge David D. Weinzweig joined.

---

**T H U M M A**, Judge:

**¶1**        The Roveys appeal from the grant of summary judgment quieting title to real property in their favor, subject to an easement for roadway use, and dismissing their claims for trespass and inverse condemnation. Because the Roveys have shown no error, the judgment is affirmed.

### FACTS AND PROCEDURAL HISTORY

**¶2**        The Roveys own, directly or indirectly, parcels of land that abut portions of Jackrabbit Trail, Yuma Road and Perryville Road in Maricopa County near the city of Buckeye (collectively, the Disputed Roads). The Roveys acquired their parcels in 1999, 2012 and 2016.

**¶3**        The Disputed Roads have been used as public roadways for decades, including before the Roveys acquired their parcels. The County paved the Disputed Roads in the 1970s and 1980s and has maintained them ever since. Warranty deeds that predate the Roveys' acquisition of their parcels abutting Jackrabbit Trail and Yuma Road note the existence of the roadways. These recorded deeds variously declare that the land transferred was "except the North 33 feet for road," "except the North and East 33 feet for road purposes," "except road on the north" and "except road."

**¶4**        In March 2017, the County filed three complaints to condemn portions of the Roveys' parcels for planned expansions of Jackrabbit Trail and Yuma Road. In July 2017, the Roveys sent the County a notice of claim, asserting that the County's maintenance of Jackrabbit Trail and Yuma Road was a trespass on their parcels and also claimed the County was liable for inverse condemnation. *See* Ariz. Rev. Stat. (A.R.S.) § 12-821.01 (2020).[1] The County did not respond to the notice of claim. Meanwhile, the Roveys

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

answered the County's complaints, counterclaiming for trespass and inverse condemnation and seeking a judgment quieting title to Jackrabbit Trail and Yuma Road in their favor. Later in 2017, the Roveys filed a complaint against the County alleging trespass and inverse condemnation involving Perryville Road.

¶5　　　　After these actions were consolidated, the County filed an amended complaint seeking to condemn Jackrabbit Trail and Yuma Road, but not Perryville Road. The Roveys reasserted their claims and counterclaims, and the parties cross-moved for summary judgment. In resolving those motions, the court quieted title to the land under Jackrabbit Trail and Yuma Road in favor of the Roveys, but ruled the warranty deeds predating their interests created excepted easements in favor of the County for public roadway use. The court dismissed the Roveys' trespass claims as time-barred, finding the County's trespass was permanent (meaning the claim accrued when the trespass began), not continuous. Because the Roveys acquired their parcels after the Disputed Roads were built, without a right to payment (which would have been personal, not running with the land), the court also dismissed their inverse condemnation claims.

¶6　　　　The court then entered a partial final judgment reflecting these rulings. *See* Ariz. R. Civ. P. 54(b).[2] This court has jurisdiction over the Roveys' timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. sections 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶7　　　　This court reviews the entry of summary judgment de novo, "viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion," *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003), to determine "whether any genuine issues of material fact exist," *Brookover v. Roberts Enter., Inc.*, 215 Ariz. 52, 55 ¶ 8 (App. 2007). When uncontroverted, "facts alleged by affidavits attached to motions for summary judgment may be considered as true." *Portonova v. Wilkinson*, 128 Ariz. 501, 502 (1981). The grant of summary judgment will be affirmed if it is correct for any reason. *Hawkins v. State*, 183 Ariz. 100, 103 (App. 1995).

---

2 The claims yet to be resolved include the County's condemnation of portions of the Roveys' parcels for planned expansion of Jackrabbit Trail and Yuma Road.

I.    **The Court Properly Quieted Title in Favor of the Roveys in the Jackrabbit Trail and Yuma Road Properties, Subject to Easements in Favor of the County for the Roadways.**

¶8        The Roveys argue the County never acquired easements for Jackrabbit Trail and Yuma Road, could not create a public road by prescription and was required to pay for easements constituting rights of way. On appeal, however, neither the Roveys nor the County squarely challenge the superior court's ruling applying "strips and gores" to conclude the Roveys hold title to their parcels subject to easements in favor of the County for the roadways. That ruling defeats the Roveys' takings claims regarding easements for Jackrabbit Trail and Yuma Road.

¶9        The Roveys asked the superior court to apply the rule of "strips and gores" to quiet title to Jackrabbit Trail and Yuma Road in their favor. Long recognized in Arizona as a rule of construction for real estate conveyances, the rule of strips and gores rule provides:

> If land abutting on a public way is conveyed by a description covering only the lot itself, nevertheless, the grantee takes title to the center line of the public way if the grantor owned the underlying fee, unless the contrary intention sufficiently appears from the granting instrument itself, or the circumstances surrounding the conveyance.

*Cottonwood/Verde Valley Chamber of Commerce, Inc. v. Cottonwood Prof'l Plaza I*, 183 Ariz. 121, 124 (App. 1994) (quoting *Torrey v. Pearce*, 92 Ariz. 12, 16 (1962)). This rule promotes certainty, affirms the presumed intent of the grantor and reflects that "[o]rdinarily right-of-way lands exist in long narrow strips or gores and are of no value to a seller when separated from the adjoining land." *Id.*

¶10        In asking the superior court to apply strips and gores, the Roveys argued that "[a]pplying the Supreme Court of Missouri's reasoning in *Brown v. Weare*[, 152 S.W.2d 649 (Mo. 1941)] makes sense here," adding that the case is "directly on point." But as quoted by the Roveys, *Brown* also held that "except road" clauses (like those in prior deeds for the Roveys' parcels) "meant that the tract was subject to the easement for the right of way." Indeed, as explicitly recognized more recently in Missouri, "[a] corollary rule" applicable to strips and gores "is that a grant of land with full covenants of warranty, which definitely describes the land conveyed,

and then excepts or reserves a roadway for the use of the public, . . . conveys the fee to the entire tract subject to the easement reserved." *Cravens v. Jolly*, 623 S.W.2d 569, 572 (Mo. App. 1981) (citing, *inter alia*, *Brown*, 152 S.W.2d at 656); *accord, e.g.*, *Lillich v. Lowery*, 320 N.W.2d 463, 465 (Neb. 1982); *Lewis v. East Texas Fin. Co.*, 146 S.W.2d 977, 980 (Tex. 1941).

¶11 This easement corollary to the strips and gores rule, although not previously addressed in Arizona, is widely accepted elsewhere. *See* W.W. Allen, *Description with Reference to Highway as Carrying Title to Center or Side of Highway*, 49 A.L.R.2d 982 (1956) (citing cases).

> The established doctrine of the common law is that where the lands described in a conveyance are abutting, along or bounded by a way, street, highway, or road, the conveyance is deemed or presumed [to] pass title to the center of the abutting roadway, subject to the public easement. However, the presumption is not an absolute rule of law, but is merely a principle of interpretation adopted for the purpose of finding out the true meaning of the words used.

12 Am. Jur. 2d *Boundaries* § 29 (2020) (citing, e.g., *Asmussen v. United States*, 304 P.3d 552 (Colo. 2013)). This easement corollary has been applied even when an easement was not expressly recognized before the dispute arose. *See Rall v. Purcell*, 281 P. 832, 833 (Or. 1929) (noting the words "'to be used as a roadway' . . . were inserted for some purpose, and to give them their proper meaning requires, we think, that they should be construed as a reservation of an easement"); *accord, e.g.*, *Queen City Sav. and Loan Ass'n v. Mechem*, 543 P.2d 355, 359 (Wash. App. 1975) (citing and following *Rall* and cases from California, Kentucky, Michigan and New York).

¶12 Applying this easement corollary to the strips and gores rule, the chains of title for the Roveys' parcels involving Jackrabbit Trail and Yuma Road include express exceptions for road purposes. Moreover, the Roveys offered nothing to rebut the presumption established by the easement corollary. Accordingly, the superior court correctly applied the strips and gores rule, including the easement corollary, in concluding that the Roveys' parcels were burdened by excepted easements in favor of the County for the roadways. As a result, the Roveys have shown no error in the court's quiet title determination regarding Jackrabbit Trail and Yuma Road.

## II.    Quiet Title for Perryville Road Was Not Properly Raised or Resolved.

¶13        The Roveys contend that the superior court quieted title in their favor for Perryville Road. Not so. The Roveys' complaint alleged they own the 33-foot right of way for Perryville Road, but did not seek to quiet title for that property. The County's motion for partial summary judgment did not mention title to Perryville Road. Nor has the County sought to condemn any portion of Perryville Road.

¶14        In their cross-motion for partial summary judgment, the Roveys asked the superior court to quiet title for Perryville Road. Apparently recognizing the Roveys had not included a quiet title claim for Perryville Road in their pleadings, the court did not quiet title to Perryville Road. Accordingly, because the issue was not properly joined and the superior court did not address it, that court did not quiet title to Perryville Road.

## III.    The Superior Court Properly Dismissed the Roveys' Claims for Trespass and Inverse Condemnation.

¶15        Because the court properly determined the County holds an easement to Jackrabbit Trail and Yuma Road, the Roveys' trespass and inverse condemnation claims involving those roads fails. However, because there was no comparable determination regarding Perryville Road, the question remains whether the superior court properly rejected the Roveys' trespass and inverse condemnation claims involving Perryville Road.

### A.    Trespass Claim.

¶16        A claim against a public entity must be asserted within one year after the cause of action accrues, A.R.S. § 12-821, and a notice of claim must be served on the public entity within 180 days after the cause of action accrues, A.R.S. § 12-821.01. "We review de novo questions of law concerning the statute of limitations, including 'when a particular cause of action accrues,' where, as here, such a determination 'hinges solely on a question of law rather than resolution of disputed facts." *Rogers v. Bd. of Regents of Univ. of Ariz.*, 233 Ariz. 262, 265 ¶ 6 (App. 2013) (quoting *Montaño v. Browning*, 202 Ariz. 544, 546 ¶ 4 (App. 2002)).

¶17        The date on which a trespass claim accrues depends on whether the trespass is "continuous" or "permanent." A claim for continuous trespass does not accrue until the conduct has ended. *See Garcia v. Sumrall*, 58 Ariz. 526, 533 (1942). By contrast, a claim for a permanent trespass accrues when the trespass begins. *See City of Phoenix v. Johnson*, 51 Ariz. 115, 126 (1938).

¶18        The Arizona Supreme Court's most definitive discussion of the difference between "continuous" and "permanent" came in a nuisance case. "In order for a nuisance to be permanent, it is usually necessary that the nuisance be created by the inherent character of a structure or business and that its lawful *and necessary* operation creates a permanent injury." *City of Tucson v. Apache Motors*, 74 Ariz. 98, 102 (1952) (emphasis added) (quoting *Shelley v. Ozark Pipe Line Corp.*, 37 S.W.2d 518, 519 (Mo. 1931)). In *Johnson*, the city installed a sewer system but failed to operate it properly, causing noxious odors. 51 Ariz. at 120. Area landowners brought claims for destruction of property and interference with comfort and enjoyment. *Id.* at 120–21. *Johnson* held that, even though the sewer was permanently installed on the property, the city could have operated the sewer in such a way to not interfere with the landowners' use. *Id.* at 126. Accordingly, the city's failure was a continuous, not a permanent, trespass. *Id.*

¶19        Applying the *Johnson* analysis, a public road cannot be maintained or operated without interfering with the property the Roveys claim to own. Accordingly, the presence of the Disputed Roads is a permanent trespass, *see City of Tucson*, 74 Ariz. at 102; *Johnson*, 51 at 126, meaning any trespass claim accrued decades ago, when Perryville Road was created. As a result, the statute of limitations expired decades ago, meaning the Roveys' trespass claim is time-barred.

¶20        The Roveys argue the trespass claim accrued when, after the Roveys' notice of claim served in July 2017, the County refused to condemn the right of way. But a claim for a permanent trespass accrues when the trespass begins, *Johnson*, 51 Ariz. at 126, not when the trespasser rejects or ignores a demand for damages. For these reasons, the Roveys have not shown the court erred in finding their trespass claim was time-barred.

### B. Inverse Condemnation Claim.

**¶21** The superior court concluded that any inverse condemnation claim was personal and had not been expressly conveyed to the Roveys when they acquired their parcels. Whether a landowner is entitled to condemnation damages is a question of law subject to de novo review. *City of Phoenix v. Mangum*, 185 Ariz. 31, 33 (App. 1996).

**¶22** A claim for inverse condemnation is personal and does not pass to a grantee unless the grantor expressly conveys it. "[T]he damages belong to the owner at the time of the taking and do not pass to a grantee of the land under a deed made subsequent to that time, unless expressly conveyed therein." *Boyd v. Atchison, T. & S. F. Ry. Co.*, 39 Ariz. 154, 159 (1931) (emphasis omitted). *Boyd* reasoned that when a grantee takes title to land subject to a preexisting burden — in that case, a railroad track — the grantee is "presumed to know the entire situation," and cannot therefore sustain a claim as if the grantee took title to unburdened land. *Id.*

**¶23** Here, it is undisputed the Roveys took title to the land decades after Perryville Road was built. When the Roveys acquired title, Perryville Road was in use and obvious. Moreover, the documents transferring title to the Roveys did not also expressly transfer the right to damages, which was personal and did not run with the land. Accordingly, the Roveys did not acquire that right. *Id.* Nor have the Roveys shown that any exception to this *Boyd* rule should apply.

**¶24** The Roveys argue that *State ex rel. Miller v. Dawson*, 175 Ariz. 610 (1993) is contrary to the ruling that the inverse condemnation claim belonged to the former owners because *Dawson* allowed subsequent property owners to press an inverse condemnation claim. *Dawson*, however, did not expressly address that issue. Nor did *Dawson* purport to modify *Boyd*. Although *Dawson* allowed an inverse condemnation claim to proceed, nowhere did it address when the landowners pressing that claim acquired their interest in the land. Nor did *Dawson* address whether, if applicable, the documents transferring the land also expressly conveyed the right to damages. Instead, *Dawson* decided that the State cannot acquire an easement by prescription, a proposition that is not in dispute here. 175 Ariz. at 612. For these reasons, the superior court in this case properly applied *Boyd* in concluding that the Roveys do not have a claim for inverse condemnation.

## CONCLUSION

¶25       The partial final judgment is affirmed. The County is awarded its taxable costs incurred on appeal contingent upon its compliance with Arizona Rule of Civil Appellate Procedure 21.

